IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| SAMUEL PARKER, | * |
| Plaintiff, | * |
| vs. | *   CASE NO. 3:24-CV-51 (CDL) |
| ISMAEL CORZO, | * |
| Defendant. | * |

O R D E R

This is an action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. Samuel Parker worked for Hawk Logistics, LLC. He claims that he was misclassified as an independent contractor instead of an employee and that Hawk Logistics failed to pay him minimum wage and overtime compensation as required by the FLSA. Parker also asserts that Hawk Logistics Chief Executive Officer Ismael Corzo was his employer within the meaning of the FLSA. Corzo, a Tennessee citizen, contends that the Court cannot exercise personal jurisdiction over him. Corzo further argues that Parker and his attorney should be sanctioned for filing this action in Georgia. The Court permitted limited jurisdictional discovery, as well as supplemental briefing on Corzo's motion to dismiss for lack of personal jurisdiction. For the reasons set forth below, the Court grants Corzo's motion to dismiss (ECF No. 9). The Court denies the motion for sanctions (ECF No. 14).

## STANDARD

Corzo argues that this action should be dismissed for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). A plaintiff "seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *N. Am. Sugar Indus., Inc. v. Xinjiang Goldwind Sci. & Tech. Co.*, 124 F.4th 1322, 1333 (11th Cir. 2025) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). If a defendant challenges personal jurisdiction in a Rule 12(b)(2) motion to dismiss, the Court may "decide the motion to dismiss 'under a prima facie standard' without an evidentiary hearing." *Id.* (quoting *AcryliCon USA, LLC v. Silikal GmbH*, 985 F.3d 1350, 1364 (11th Cir. 2021)). The defendant challenging jurisdiction may submit affidavits in support of his position, then the burden shifts back to the plaintiff to produce evidence supporting jurisdiction. *Id.* If the Court decides the motion to dismiss under a prima facie standard, the "court must construe all reasonable factual inferences in favor of the plaintiff to the extent that 'the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits.'" *Id.* (quoting *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010)).

FACTUAL BACKGROUND

Parker argues that the following facts are sufficient to establish personal jurisdiction over Corzo.  Hawk Logistics is a Tennessee-based trucking company with at least fifty employees and fifty independent contractors.  Corzo lives in Tennessee and has been the chief executive officer of Hawk Logistics since 2012.  Corzo Dep. 11:21-25, ECF No. 21-1.  Corzo admits that as chief executive officer, he makes financial decisions for Hawk Logistics and gives guidance to employees.  *Id.* at 25:3-8.  Corzo also helped determine the qualifications required for an applicant to be hired as a driver for Hawk Logistics.  *Id.* at 28:9-29:15.

Hawk Logistics advertises online for new drivers, and it hired at least one driver from Georgia in the last two years.  *Id.* at 17:2-19.  After a driver completes the application process and accepts an offer from a Hawk Logistics recruiter, the driver travels to Tennessee to finish paperwork, complete training, and receive a truck.  *Id.* at 27:2-11.  Hawk Logistics uses a dispatch system to schedule pickup or delivery of freight.  *Id.* at 36:11-37:3.  Hawk Logistics sometimes dispatches drivers to retrieve or deliver tractor trailer loads in Georgia.  Goney Decl. ¶¶ 16-20, ECF No. 21-2; Parker Decl. ¶¶ 15, 18, ECF No. 11-1.  Parker did not point to any evidence that Hawk Logistics regularly does or solicits business in Georgia, and he did not point to evidence of

what, if any, revenue Hawk Logistics derives from goods or services in Georgia.

Corzo denies being involved in the day-to-day management of Hawk Logistics, including hiring and dispatching drivers. Parker did point to evidence that Corzo participated in aspects of the company's day-to-day management: Corzo was involved in the recruiting and hiring of some drivers, Goney Decl. ¶¶ 10-11; he regularly communicated with one Hawk Logistics driver trainer about the driver trainer's day-to-day duties, *id.* ¶¶ 6, 16-20; *id.* & Ex. A, Text Messages between T. Goney and I. Corzo, ECF No. 21-2; and he informed the driver trainer about his payment terms and had the driver trainer purchase items and equipment for Hawk Leasing. *Id.* Decl. ¶¶ 21-22.

Plaintiff Samuel Parker learned from a friend that Hawk Logistics might be hiring truck drivers, and he applied for a job with Hawk Logistics via an online application in March 2024. Parker Decl. ¶ 4. At the time, he lived in Athens, Georgia. A Hawk Logistics recruiter reviewed Parker's application and asked him to go to Tennessee to sign a work agreement. *Id.* ¶ 8. Hawk Logistics provided Parker with a bus ticket to Tennessee; Parker went to Tennessee and signed an agreement to work as a driver for Hawk Logistics. *Id.* ¶¶ 10-12. Although Parker pointed to evidence that Corzo "saw" Parker when he came to Tennessee for orientation and may have said hello, Corzo Dep. 40:19-22, Parker did not point

4

to any evidence that Corzo was personally involved in his recruiting, hiring, or the decision to classify him as an independent contractor rather than an employee. Hawk Logistics dispatched Parker to retrieve and deliver trailers in multiple states, including Georgia. Parker Decl. ¶¶ 15-18. Parker did not point to any evidence that Corzo was personally involved in those dispatch decisions.

In March 2024, Parker contacted Hawk Logistics via telephone to complain that he had not been paid. *Id.* ¶ 25. He spoke with Corzo, who assured Parker that he would be paid, and Corzo directed Parker to contact the human resources department to arrange payment. *Id.* ¶ 26. In April 2024, Parker contacted Hawk Logistics via telephone to complain that his Hawk Logistics truck did not have functioning heat or air conditioning; he spoke with Corzo, who directed Hawk Logistics to provide Parker with a different truck. *Id.* ¶¶ 22-23. It is not clear from the present record what happened next, but Corzo does contend that Parker left a Hawk Logistics trailer "abandoned in Georgia," that he held a Hawk Logistics truck "hostage" at his home in Georgia and Corzo had "to ask someone to retrieve the trailer." Corzo Dep. 37:19-21; *id.* at 31:7-15.

## DISCUSSION

Parker contends that the Court may exercise personal jurisdiction over Corzo as an "employer" within the meaning of the

5

FLSA, mainly citing the connections Hawk Logistic*s* had with Georgia.  Thus, he appears to assert that Corzo is subject to personal jurisdiction in Georgia because (1) Hawk Logistics transacted business in Georgia and (2) Corzo managed some day-to-day operations of Hawk Logistics.  Corzo contends that Hawk Logistics did not transact business in Georgia and that even if it did, Corzo cannot be held liable for the company's conduct in Georgia.

When personal jurisdiction is based on a federal question arising under a statute like the FLSA that is silent on service of process, the courts must undertake a two-part analysis: (1) determine whether the forum state's "long-arm statute provides a basis for personal jurisdiction" and (2) decide whether "sufficient minimum contacts exist between the defendants and the forum state so as to satisfy 'traditional notions of fair play and substantial justice' under the Due Process Clause of the Fourteenth Amendment." *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996) (quoting *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 256 (11th Cir. 1996)); *see also Aviles v. Kunkle*, 978 F.2d 201, 203-04 (5th Cir. 1992) (per curiam) (noting that the FLSA "is silent as to service of process").

Georgia's long-arm statute permits personal jurisdiction over a nonresident defendant who "[t]ransacts any business" in Georgia.  O.C.G.A. § 9-10-91(1).  Parker asserts that Hawk Logistics

6

transacted business in Georgia by (1) hiring Parker (a Georgia citizen) as a driver, (2) sometimes dispatching him and another driver to or through Georgia, and (3) communicating with Parker about work while he was in Georgia.[1]  Parker further contends that Corzo, as the chief executive officer who manages some of the company's day-to-day operations, is subject to jurisdiction in Georgia based on acts taken in his capacity as a Hawk Logistics corporate officer.

Even if the Court were to assume that Hawk Logistics transacted business in Georgia, the central question in this action is whether *Corzo* purposefully availed himself of the privilege of conducting business in Georgia.  Jurisdiction over a corporate officer does not necessarily arise from jurisdiction over the company.  Rather, personal jurisdiction only extends to a corporate officer who is a "primary participant" in "an alleged wrongdoing intentionally directed at a . . . resident [of the forum state]." *Amerireach.com, LLC v. Walker*, 719 S.E.2d 489, 494 (Ga. 2011) (alteration in original).  Here, Parker did not point to any evidence that Corzo was a primary participant in any alleged wrongdoing that was intentionally directed at Parker.  Parker did

---

[1] Parker did not point to any evidence that Hawk Logistics regularly solicits business in Georgia or that it derives revenue from any business in Georgia.  He also did not point to any evidence that Hawk Logistics purposefully directed its online application to Georgia citizens like Parker or that it specifically sought to hire Georgia citizens for the Tennessee trucking business.

7

not point to any evidence that Corzo was personally involved in his recruiting, hiring, or the decision to classify him as an independent contractor. Although Parker pointed to evidence that Corzo made some financial decisions for Hawk Logistics, he did not point to any evidence that Corzo established the company's policies on how drivers would be classified and paid. Parker also did not point to evidence that Corzo regularly supervised drivers other than one driver trainer, and he did not point to evidence that Corzo supervised Parker at all. Instead, he pointed only to evidence that Parker called Hawk Logistics from Georgia and spoke with Corzo via telephone once to arrange for replacement of a faulty truck and once regarding the timing of his paycheck.

Based on this evidence, the Court is not convinced that the record, even when viewed in the light most favorable to Parker following an opportunity for jurisdictional discovery, permits the conclusion that Corzo transacted business in Georgia or that he had sufficient contacts with Georgia to satisfy traditional notions of fair play and substantial justice. Accordingly, the Court finds that it may not exercise personal jurisdiction over Corzo. His motion to dismiss is granted.

## CONCLUSION

As discussed above, the Court grants Corzo's motion to dismiss for lack of personal jurisdiction (ECF No. 9).

Corzo contends that Parker and his counsel should be sanctioned under Federal Rule of Civil Procedure 11 because a reasonable inquiry would have shown—before jurisdictional discovery—that it was objectively frivolous for Parker to claim that a Georgia court could exercise personal jurisdiction over Corzo. Although the Court finds that Parker did not establish a basis for personal jurisdiction over Corzo despite having an opportunity to engage in jurisdictional discovery, the Court does not find that it was objectively frivolous for him to pursue his claims against Corzo or to seek discovery to test Corzo's assertions regarding his contacts with Georgia. Accordingly, the Court denies Corzo's motion for sanctions (ECF No. 14).

IT IS SO ORDERED, this 27th day of February, 2025.

S/Clay D. Land  
CLAY D. LAND  
U.S. DISTRICT COURT JUDGE  
MIDDLE DISTRICT OF GEORGIA